# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

TODD VENABLE                                    CIVIL ACTION

VERSUS                                          18-847-SDD-RLB

ENLINK MIDSTREAM OPERATING, LP

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant, EnLink Midstream Operating, LP ("Defendant" or "EnLink"). Plaintiff, Todd Venable ("Plaintiff") has filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3] For the following reasons, the Court finds that Defendant's motion should be granted in part and denied in part.

## I.    FACTUAL BACKGROUND[4]

EnLink contends Plaintiff's employment began with EnLink around 2004, when Plaintiff was approximately forty-six (46) years old, after Defendant – known as Crosstex at the time – purchased the Riverside plant located in Geismar, Louisiana.[5] Plaintiff

---

[1] Rec. Doc. No. 22.
[2] Rec. Doc. No. 34.
[3] Rec. Doc. No. 37.
[4] The Factual Background is derived from the Defendant's Statement of Uncontested Material Facts, Rec. Doc. No. 22-2, Plaintiff's Opposition to Defendant's Statement of Uncontested Material Facts and Statement of Material Facts Genuinely in Dispute, Rec. Doc. No. 31-1, and the Parties' briefs. However, in several instances, Plaintiff offers statements not supported by citation to record evidence. These purported facts do not comply with Rule 56 of the Federal Rules of Civil Procedure and the Local Rules of this Court, and they will not be included herein.
[5] Rec. Doc. No. 1-1.
58686

claims he worked at the Riverside plant for approximately twenty (20) years[6] prior to his termination in 2017 at the age of fifty-seven (57) years old.[7] It is undisputed that Crosstex became EnLink in 2014.[8] Defendant claims that, from 2011 to 2017, Plaintiff was a board operator who was immediately supervised by Foreman Jeff Gautreau ("Gautreau").[9] During this time, Plaintiff was also managed by Chad Vaughn ("Vaughn"), who was the Plant Manager and Gautreau's immediate supervisor; Edwin Cormier (Cormier), Director of Operations; and Greg Gibson ("Gibson"), Director of Operations.[10]

Defendant contends that, upon taking over the plant, it provided Plaintiff with a Company-based e-mail account, and Plaintiff also received EnLink's Employee Policy Handbook ("Handbook"), which contained the following policies: the Anti-Discrimination and Anti-Harassment policy and the accompanying Report Process and Procedures to Resolve Issues and EnLink's Email and Internet Access policy.[11] EnLink maintains Plaintiff signed acknowledgements verifying that he reviewed these policies, and he admitted that he received training on all of the policies in the Handbook.[12]

EnLink's Handbook contains an Equal Opportunity Employment Policy, which provides in part: No applicant or employee will be discriminated against because of race, gender, retaliation, sexual orientation, color religion, national origin, age, veteran status, physical or mental disability, or any other characteristic protected by federal, state, or local laws.[13] EnLink's Anti-Discrimination and Anti-Harassment policy prohibits (1)

---

[6] Rec. Doc. No. 31-2, Plaintiff's Depo, pp. 27-31.
[7] Rec. Doc. No. 22-2, ¶¶ 30-32.
[8] Rec. Doc. No. 31-1, ¶ 2.
[9] Rec. Doc. No. 22-3, Plaintiff's Depo.
[10] Rec. Doc. No. 22-5, Cormier Depo, pp. 27-30.
[11] Rec. Doc. No. 22-3, Plaintiff's Depo, pp. 115-121 & Exh. 4 attached thereto.
[12] *Id.* at pp. 104, 108, 122, & Exh. 4 attached thereto.
[13] *Id.* at p. 110 & Exh. 4 attached thereto.

58686

Displaying, viewing, possessing or bringing to the workplace…graphics or other materials or objects that have an offensive connotation; (2) Written or graphic material or objects that are sexually-oriented, obscene, criticize or show hostility or aversion toward an individual or group; and (3) Offensive messages conveyed through company equipment via email, phone (including voice messages), text messages, tweets, blogs, social networking sites or other means.[14]  EnLink's E-mail and Internet Access Policy prohibits "[d]isplaying, transmitting, forwarding, viewing, archiving, or storing any messages or graphic which is…offensive, inappropriate, harassing, threatening, discriminatory, sexually-explicit, pornographic, or obscene."[15]

In February or March of 2017, EnLink's Human Resources ("HR") department began an investigation of employee Ricky Bellard ("Bellard") after having received reports that Bellard was threatening other employees.[16]  During the course of this investigation, Bellard's e-mail inbox was searched by HR Director Stacy Cardwell ("Cardwell"), who discovered e-mail messages with sexually explicit pictures sent to Bellard by Plaintiff.[17] This caused Cardwell to subsequently investigate Plaintiff's company e-mail, and she discovered that Plaintiff sent numerous inappropriate e-mails to his coworkers, third-parties, and himself over the preceding year.[18]  In his deposition, Plaintiff admitted to

---

[14] *Id.* at pp. 115-116 & Exh. 4 attached thereto.
[15] *Id.* at p. 121 & Exh. 4 attached thereto.
[16] Rec. Doc. No. 22-4, Cardwell Depo, pp. 30, 44-45.
[17] *Id.* at pp. 31-32.
[18] Rec. Doc. No. 22-3, Plaintiff's Depo, p. 158, and Exh. 6, attached thereto; pp. 163-164, and Exh. 7 attached thereto; p. 175, and Exh. 11 attached thereto; p. 180, and Exh. 12 attached thereto; p. 182, and Exh. 13 attached thereto; Exh. A, p. 152; and Exh. 5 attached thereto; p. 166, and Exh. 8 attached thereto; pp. 168-169, and Exh. 9 attached thereto; p. 172, and Exh. 10 attached thereto. Due to the explicit nature of these emails, EnLink has filed them under Seal as a separate exhibit (Exhibit H), at Rec. Doc. No. 27. 58686

sending all of these emails.[19]  EnLink claims that some of the more explicit emails included a joke (entitled "Moose") featuring a picture of a woman's genitals, another joke (entitled "Will the US Dollar fall?") depicting a picture of a dollar bill lodged in between a woman's buttocks, and an email (entitled "Heterosexual Male Pride Day") which disparaged "women libbers" and "gays" and featured a picture of a completely nude woman with her hands placed suggestively on her chest.[20]

Cardwell testified that Plaintiff was the first EnLink employee she had found engaging in this type of conduct.[21]  EnLink claims that, based on these findings, Cardwell, who was forty-one (41) years old at the time, recommended that Plaintiff be terminated for violating both the Anti-Discrimination and Anti-Harassment policy and the E-mail and Internet Access Policy.[22]  EnLink further claims that Cardwell's recommendation was ultimately accepted and approved by Rhonda Price (Sr. Vice President of Human Resources and Organizational Development, who was 60 years old at the time); Jennifer Johnson (Vice President of Human Resources, who was 54 years old at the time); and Michael LeBlanc (Sr. Vice President of Operations, who was 55 years old at the time).[23]  Thus, as EnLink notes, all four decisionmakers who participated in the decision to terminate Plaintiff were over the age of 40.[24]

EnLink contends that it also searched the email accounts of the nineteen (19) other

---

[19] *Id.* at pp. 151, 155-156, 161, 165, 168-169, 171-172, 174, 179, 181, 183-184, 188-189, 192, 199; Rec. Doc. No. 22-4, Cardwell Depo, p. 119.
[20] *Id.* at p. 158, and Exh. 6, attached thereto; pp. 163-164, and Exh. 7 attached thereto; p. 175, and Exh. 11 attached thereto; p. 180, and Ex. 12 attached thereto; p. 182, and Ex. 13 attached thereto; p. 152; and Exh. 5 attached thereto; p. 166, and Exh. 8 attached thereto; p. 168-169, and Exh. 9 attached thereto; p. 172, and Exh. 10 attached thereto.
[21] Rec. Doc. No. 22-4, Cardwell Depo, p. 83.
[22] *Id.* at p. 50 and Ex. 3 attached thereto.
[23] Rec. Doc. No. 22-6, LeBlanc Declaration, ¶¶ 4-6.
[24] *Id.*
58686

employees that received the inappropriate and sexually explicit emails from Plaintiff.[25] Of those nineteen, Enlink claims that only one employee, Larry Leblanc, forwarded some of Plaintiff's inappropriate emails.[26] Cardwell testified that Leblanc was found to have forwarded three of the less explicit emails received from Plaintiff – inappropriate jokes but containing no nudity – to primarily outside individuals not employed by EnLink.[27] Thus, Larry Leblanc was given a final written warning and was required to attend policy training.[28] Further, EnLink claims it issued verbal reprimands to the remaining recipients of Plaintiff's inappropriate emails and required them to complete additional training on the relevant policies, including signing additional acknowledgements of the policies contained in the Handbook.[29]

Both Cardwell and Michael Leblanc testified that they were unaware of Plaintiff's age at the time of his termination.[30] EnLink maintains that there was no discussion amongst the decisionmakers about Plaintiff's age when the decision was made to terminate Plaintiff's employment.[31] EnLink further claims that Vaughn, Cormier, and Gibson had no input in the decision to terminate Plaintiff.[32]

On May 24, 2017, Cardwell met with Plaintiff to discuss the investigation and EnLink's final decision.[33] During this meeting, Plaintiff admitted to sending all of the

---

[25] Rec. Doc. No. 22-4, Cardwell Depo, p. 50 and Ex. 4 attached thereto.
[26] *Id.* at pp. 50-51 and Ex. 4 attached thereto.
[27] *Id.*
[28] *Id.*
[29] *Id.* at p. 54.
[30] *Id.* at p. 127; Rec. Doc. No. 22-6. LeBlanc Declaration, ¶ 7.
[31] *Id.*at ¶ 8.
[32] Rec. Doc. No. 22-5, Cormier Depo, pp. 46-47; Rec. Doc. No. 22-9, Vaughn Depo, p. 55; Rec. Doc. No. 22-8, Gibson Depo, p. 51.
[33] Rec. Doc. No. 22-3, Plaintiff's Depo, pp. 202-203, 210.
58686

inappropriate and sexually explicit emails.[34]

EnLink contends that, during his employment with EnLink, Plaintiff never made any complaints regarding age-related harassment or discrimination to EnLink's HR department, levels of upper management, or the Anonymous Report Line.[35] EnLink's HR department has no documented record of Plaintiff having ever raised any complaints of harassment or discrimination.[36]

Plaintiff tells a very different story. Plaintiff claims that, over the twenty years he was employed at the Riverside plant, he worked his way up to "senior" or "lead" board operator,[37] the highest position an operator can obtain.[38] Gautreau, Plaintiff's immediate supervisor, described Plaintiff as "top level," "trusting," "honest," and a man of "uncompromised integrity" who had the "performance to back it up."[39] During his employment, Plaintiff claims he never had any performance issues and was never disciplined.[40]

Plaintiff claims that he was "systematically targeted" "because of his age in an effort to secure his termination."[41] Plaintiff contends he was repeatedly called an "old man" and "old fart" by EnLink's much younger employees, including Josh Byerly, Bryan

---

[34] *Id.* at pp. 151, 155-156, 161, 165, 168-169, 171-172, 174, 179, 181, 183-184, 188-189, 192, 199, 217; Rec. Doc. No. 22-4, Cardwell Depo, p. 119.
[35] *Id.* at pp. 134, 139.
[36] Rec. Doc. No. 22-4, Cardwell Depo, p. 127.
[37] Rec. Doc. No. 31-2, Plaintiff's Depo, pp. 27-31.
[38] *Id.*
[39] Rec. Doc. No. 31-3, Gautreau Depo, p. 57.
[40] Rec. Doc. No. 31-2, Plaintiff's Depo, pp. 40-41. Plaintiff's testimony does not directly support the offered statement of fact. Plaintiff testified that he had good performance evaluations but also testified that Cormier, Vaughn, and Gibson, did inform Plaintiff on occasion that his job was not being done correctly. See p. 41, lines 5-19. In fact, Plaintiff testified that "Eddie" (Cormier) informed him that he was not doing his job correctly "[p]retty much, every time he called in the control room." *Id.* at lines 13-14.
[41] Rec. Doc. No. 31-1, ¶ 7 (citing Rec. Doc. No. 31-2, Plaintiff's Depo, pp. 259-260; 302-304).
58686

Shexnayder, Laken Petit, Aaron Paulus, and Preston Savage.[42]  Plaintiff also contends that, when Vaughn took over as Plant Manager in 2015, Enlink began an effort to terminate the "senior" employees, including Plaintiff, to obtain "younger" employees.[43] Plaintiff claims that Gautreau told him that Mike Leblanc, Gibson, Vaughn, and Cormier directed him to "get rid" of the "senior" operators, including Plaintiff.[44]  Plaintiff also claims that EnLink managers directed Gautreau to force Plaintiff into retirement by constantly asking when he would do so.[45]  Plaintiff testified that Gautreau advised him of EnLink's motive to get the older employees out and warned Plaintiff he was in danger of losing his job.[46]  Plaintiff argues that, throughout 2015-2017, Gibson, Vaughn, and Cormier, at the direction of Leblanc, began harassing Plaintiff because of his age, referring to him as "senior" operator, "old guy," and "problem guy," in a derogatory and intimidating manner.[47] Plaintiff also claims the term "senior" in reference to operator was not his job title and was not used at any other plant.[48]  Additionally, Plaintiff claims that his supervisors criticized his salary, accused him of being "stupid," "making too much money," and being "spoiled."[49]  Plaintiff maintains that these comments were still being routinely made at the time of his termination in May of 2017.[50]  Plaintiff argues he felt targeted, threatened, and offended, and this caused him to begin making mistakes at work that he did not usually

---

[42] Rec. Doc. No. 31-2, Plaintiff's Depo, pp. 308-310; 317-318; Rec. Doc. No. 31-3, Gautreau Depo, pp. 195-197.
[43] *Id.* at pp. 61-63, 281.
[44] *Id.* at pp. 318-319; Rec. Doc. No. 31-3, Gautreau Depo, pp. 59-61, 81-87.
[45] Rec. Doc. No. 31-3, Gautreau Depo, pp. 74-77; 83-84.
[46] Rec. Doc. No. 31-2, Plaintiff's Depo, pp. 37-40, 99-100, 127-129, 141, 238-239; Rec. Doc. No. 31-3, Gautreau Depo, pp. 59, 66-70, 78-80, 97-98, 177-179.
[47] *Id.* at pp. 52-57, 67, 125-127, Rec. Doc. No. 31-3, Gautreau Depo, pp. 71-72.
[48] Rec. Doc. No. 31-3, Gautreau Depo, pp. 81.
[49] Rec. Doc. No. 31-2, Plaintiff's Depo, pp. 36-37, 48-51, 67, 71-75, 287.
[50] *Id.* at pp. 135-137, 285, 305-306.
58686

make.[51]   Further, Plaintiff contends the age harassment he endured was witnessed by other EnLink employees, including Gautreau, Bellard, and Bryan Blank.[52]

Plaintiff claims he complained about the age-based harassment he suffered on many occasions, to no avail.  Plaintiff testified that he told Vaughn, Gibson, and Cormier directly to "just stop" when they questioned him regarding retirement or called him spoiled.[53]   Plaintiff also complained to Gautreau on several occasions and told him he intended to report the conduct to HR.[54]   Plaintiff contends Gautreau advised Plaintiff against going to HR because Gautreau believed the company would retaliate against Plaintiff.[55]

Plaintiff contends Mike Leblanc and Cardwell were made aware of his complaints of discrimination and harassment by Gautreau.  Gautreau testified that, while he did not reach out to HR specifically on Plaintiff's behalf, he did report to HR about the comments being made to "the six senior guys."[56]  When asked for the timing and to whom he reported these complaints, Gautreau responded that he was not sure, but "[i]t had to be toward the end of '16 through '17," and he spoke to "[t]he same three general ladies from human resources."[57]   Gautreau testified that the ladies' response was something to the effect of "[m]en in power lose their way and thank you."[58]  Gautreau testified that he reported work place harassment to which he was allegedly subjected and that Plaintiff "was included in that," and Gautreau's complaints were of the "constant barrage of being overpaid, …

---

[51] *Id.* at pp. 289-291, 311.
[52] *Id.* at pp. 80-82.
[53] *Id.* at pp. 67-68.
[54] *Id.* at pp. 127-131; Rec. Doc. No. 31-3, Gautreau Depo, pp. 101-102, 180-181.
[55] *Id.*; Rec. Doc. No. 31-3, Gautreau Depo, pp. 187-189.
[56] Rec. Doc. No. 31-3, Gautreau Depo, p. 188.
[57] *Id.* at 190, lines 1-6.
[58] *Id.*, lines 7-25.

58686

spoiled rotten, not being able to follow directions,"[59] and of "sexual misconduct, work place harassment, the bombarge [sic] of harassment to my direct reports … and the age discrimination."[60]  Gautreau testified that he did not specifically name Plaintiff but that he told HR "that this was happening to me and to all of the direct reports that were underneath me."[61]

Next, Plaintiff claims that, in retaliation for his complaints about age-based harassment, EnLink fired him "for a false violation of policy."[62]  Plaintiff cites to his deposition testimony that he was told by co-worker Laine Leblanc that the email investigation was a "setup," which Plaintiff interpreted as follows:  "We all think I was set up because I was resisting Eddie and them. I mean, these emails were pulled out by our IT guys that was looking up dirt to get rid of me, from what I was told."[63]  Gautreau testified that he did not "remember telling Venable – Mr. Venable that Bart Domingue was specifically looking at his e-mails for reasons to find termination with him."[64]  However, Gautreau makes clear that he believed this to be the case based on his knowledge that he was told by Vaughn that the company's IT department "had access … to look at everbody's e-mails inside of the facility."[65]  Plaintiff claims that EnLink directed Bart Domingue to search his emails for the purpose of finding evidence warranting termination, but Gautreau testified, "well, this is an opinion, right. … I don't have the proof to say that conclusively it happened.  But if I had to take a best guess, I would say it would be Eddie

---

[59] *Id.* at p. 204.
[60] *Id.* at p. 208, lines 7-11.
[61] *Id.* at lines 15-21.
[62] Rec. Doc. No. 34, p. 7 (citing Rec. Doc. No. 31-2, Plaintiff's Depo, pp. 146-147, 230-231; Rec. Doc. No. 31-3, Gautreau Depo, pp. 136-137).
[63] Rec. Doc. No. 31-2, Plaintiff's Depo, p. 230, lines 16-25.
[64] Rec. Doc. No. 31-3, Gautreau Depo, p. 136, lines 18-21.
[65] *Id.*, lines 9-11.
58686

Cormier and Greg Gibson."[66]

Plaintiff claims that, when he was brought in to meet with Cardwell, Gibson, and Vaughn, he was told he was being terminated for emailing co-workers and others outside of the plant, an alleged violation of company policy;[67] however, Plaintiff claims he was not initially provided with any proof of this conduct or how it violated company policy at this meeting.[68] However, Plaintiff acknowledges that when he returned to Cardwell's office after the initial termination meeting, she presented him with "a stack of documents" which were the inappropriate and sexually explicit emails sent by Plaintiff, and he said "'I'm sorry if I offended anybody.'"[69]  Plaintiff testified that Cardwell told Plaintiff that she could show him more emails, but he told her he did not want to see them."[70]

Additionally, while EnLink advised Plaintiff that he was terminated for violating its Handbook and Email and Internet Access policies,[71] Plaintiff contends there is no evidence that he ever received or was made aware of the Email and Internet Access policy.  Indeed, Plaintiff claims Cardwell admitted that he was terminated for violating EnLink's Handbook and not the separate Email/Internet policy.[72]

Further, Plaintiff claims that the reason given for his termination, violation of EnLink's Handbook, is merely a pretext for age discrimination.  Plaintiff contends younger employees violated the same policy and were not terminated.[73]  Plaintiff also contends

---

[66] *Id.* at p. 137, lines 21-25 through p. 138, line 1.
[67] Rec. Doc. No. 31-2, Plaintiff's Depo, pp. 202-218.
[68] Rec. Doc. No. 34, p. 7.
[69] Rec. Doc. No. 31-2, Plaintiff's Depo, pp. 216-217.
[70] *Id.* at p. 217, lines 18-21.
[71] Rec. Doc. No. 31-4, Cardwell Depo, pp. 32-44 and Exh. 1, 2, 3 attached thereto.
[72] *Id.* at p. 49.
[73] Rec. Doc. No. 31-2, Plaintiff's Depo, pp. 293-295; Rec. Doc. No. 31-3, Gautreau Depo, pp. 107-112, 137, 151-157, 160-167, 211-215; Rec. Doc. No. 31-4, Cardwell Depo, pp. 50-56.
58686

his own supervisors, specifically Vaughn and Gibson, violated the Handbook policy and were not terminated. Gautreau testified that Vaughn attempted to show him sexually explicit photos of women stored on his cellphone, and Gibson had a sexually suggestive and/or explicit photo of a female co-worker as the screensaver on his work computer, which was apparent to anyone near his computer.[74] Plaintiff further claims that EnLink knew that Gibson and Vaughn violated the Handbook policy, and they were never disciplined, while he was terminated with a "spotless record."[75]

Plaintiff also claims that EnLink failed to follow its own internal progressive discipline procedure provided to other employees, *i.e.*, verbal and written warnings or a performance improvement plan prior to termination.[76] Moreover, Plaintiff points out that Larry Leblanc, who was also found to have violated the Handbook by forwarding three of the emails sent by Plaintiff, was given a written warning.[77] As Plaintiff was ultimately replaced by a employee that was twenty-nine (29) years old, Plaintiff maintains that EnLink accomplished its mission of getting rid of the "older guys."[78]

After receiving a Right to Sue letter from the EEOC, Plaintiff originally filed a *Petition*[79] in state court, which EnLink removed to federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367.[80] Plaintiff asserts claims of age-based discrimination, hostile work environment, and retaliation against EnLink under the Age

---

[74] Rec. Doc. No. 31-3, Gautreau Depo, pp. 107-112, 137, 151-157, 160-167, 211-215.
[75] Rec. Doc. No. 34, p. 8.
[76] Rec. Doc. No. 31-5, Gibson Depo, pp. 36-37; Rec. Doc. No. 31-6, Vaughn Depo, pp. 42-46.
[77] Rec. Doc. No. 31-4, Cardwell Depo, pp. 50-56.
[78] Rec. Doc. No. 31-6, Vaughn Depo, p. 90.
[79] Rec. Doc. No. 1-1.
[80] Rec. Doc. No. 1.
58686

Discrimination in Employment Act ("ADEA")[81] and the Louisiana Employment Discrimination Law ("LEDL"),[82] and he also asserts a claim under the Louisiana Whistleblower Statute.[83]  EnLink now moves for summary judgment on all claims asserted.  Plaintiff opposes the motion.

## II.    LAW AND ANALYSIS

### A.  Rule 56(b) and Local Rule 56(c)

In reply to Plaintiff's *Opposition*, EnLink first takes issue with Plaintiff's "denial" of EnLink's Statement of Uncontested Material Facts in that it fails to comply with Rule 56(b), and EnLink argues it should be stricken from the record.  EnLink complains that Plaintiff's denial and statements of contested fact contain "misrepresentations, unsubstantiated assertions and conclusory legal arguments rather than a proper statement of facts (with record citations) … ."[84]  The Court, in large part, agrees.

The Court finds that, while certain facts are in dispute, many facts submitted in EnLink's Statement of Uncontested Material Facts are deemed to be admitted for the purposes of this motion due to Plaintiff's failure to controvert them in accordance with Local Rule 56(c), which requires the nonmoving party to:

> submit with its opposition a separate, **short**, and **concise** statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, **shall support each denial or qualification by a record citation** as required by this rule. Each such statement shall begin with the designation "Admitted," "Denied," or

---

[81] 29 U.S.C. § 621, *et seq.*
[82] La. R.S. 23:301, *et seq.*
[83] La. R.S. 23:967.  Given that the LEDL mirrors the ADEA, courts apply federal precedent to LEDL claims, *see O'Boyle v. La. Tech Univ.*, 741 So.2d 1289, 1290 (La.App. 2 Cir.1999), analyzing both types of claims under the burden shifting framework enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[84] Rec. Doc. No. 37, p. 1, n. 2.
58686

"Qualified" and, in the case of an admission, shall end with such designation. The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule.[85]

Plaintiff complies in part with this rule, but in multiple instances, fails to offer a statement, supported by citation to record evidence, that controverts Defendant's offered statement. Because Plaintiff's responses fail to comply with Local Rule 56(c), the following are deemed admitted by the Court for purposes of this motion.

- Plaintiff denies fact #3 but fails to cite record evidence in support of the denial. Defendant's fact #3 is deemed admitted.

- Plaintiff denies fact #4, but his statement clearly qualifies fact #4 as he does not deny that Plaintiff was also managed by Vaughn, Cormier, and Gibson, but adds that Plaintiff was also supervised by Mike Leblanc, "all of whom are younger than Mr. Venable."[86] However, this statement has no citation. The next statement, that prior to his termination, Plaintiff never had performance or discipline issues while working for EnLink, is supported by record evidence, but this evidence does not reference supervision or the age of supervisors. Defendant's fact #4 is deemed admitted.

- Defendant's fact #7 directly quotes EnLink's Equal Opportunity Policy found in the Handbook. Plaintiff's "denial" does not controvert the fact that this policy is found in the Handbook. Rather, contrary to the rules, Plaintiff states that "Defendant did not abide by this policy"[87] and submits six paragraphs of primarily argument and legal conclusions rather than facts. This is not a short and concise statement of material facts. Further, facts actually submitted, when supported by record evidence, do not controvert that EnLink's Handbook contained the policy quoted in EnLink's fact #7.

---

[85] Emphasis added.
[86] Rec. Doc. No. 31-1, ¶ 4.
[87] *Id.* at ¶ 7.
58686

Defendant's fact #7 is deemed admitted.

- Plaintiff offers no response to EnLink's fact #8, which sets forth EnLink's Anti-Discrimination and Anti-Harassment policy. This fact is deemed admitted.

- Defendant's fact #9 quotes EnLink's E-mail and Internet Access Policy. Plaintiff denies this fact and directs the Court to Response No. 8, which does not exist. Further, Plaintiff submits a lengthy paragraph of argument and legal conclusions regarding pretext and offers several purported facts without citation to record evidence. The supported facts do not controvert that the E-mail and Internet Access Policy contained the prohibitions listed by EnLink. Defendant's fact #9 is deemed admitted.[88]

- Defendant's fact #10 states: "In approximately February or March of 2017, EnLink's Human Resources department investigated an employee named Ricky Bellard, after receiving reports that Mr. Bellard was threatening other EnLink employees." Plaintiff denies this fact and states: "In retaliation for Mr. Venable's protected activity, defendant directed Bart Domainque, IT, to search Mr. Venable's emails, **presumably** in an effort to discover evidence warranting termination. It was at this time, defendant, through Leblanc (the same supervisor who directed Gautreau to "get rid" of Mr. Venable because of his age) and Cardwell, decided to fire Mr. Venable because of his age and protected activity."[89] This statement contains argument and unsupported legal conclusions. Plaintiff cites to deposition testimony of Gautreau which does not controvert Defendant's fact #10; in fact, Gautreau acknowledges that it was his understanding that IT could access all employee emails, and Gautreau testified, "well, this is an opinion, right. … I don't have the proof to say that conclusively it happened. But if I had to take a best guess," he believed Cormier and Gibson instructed IT to search Plaintiff's emails. This testimony is pure speculation, is insufficient to create

---

[88] The Court acknowledges Plaintiff has presented evidence demonstrating a fact issue regarding whether Plaintiff ever received this particular policy.

[89] Rec. Doc. No. 31-1, ¶ 10 (emphasis added).

58686

a material issue of disputed fact, and does not controvert Defendant's fact #10, which is supported by record evidence. Defendant's fact #10 is deemed admitted.

- Defendant's fact #11 states: "While searching Mr. Bellard's e-mail inbox, Stacy Cardwell (Human Resources Director) discovered e-mail messages with sexually explicit pictures sent to Mr. Bellard by Plaintiff." Plaintiff offers a denial and states: "Younger employees, Byerly, Petite, Savage, and Schexnayder were discovered to possess and display inappropriate/sexually explicit images on their work computers and/or emails." Plaintiff's statement, for which he cites inapposite evidence, does not controvert Defendant's fact #11, and that fact is deemed admitted.

- Plaintiff's response to Defendant's fact #12 is the same as to #11; for the same reasons, Defendant's fact #12 is deemed admitted as not controverted by record evidence.

- Defendant's fact #13 describes several of the emails sent by Plaintiff as containing graphic photographs of nude women with exposed genitals, breasts or buttocks, images of male genitalia, and/or sexual references. Plaintiff denies this fact and states: "The actual emails are the best evidence of its contents." The Court has reviewed the emails which confirm Defendant's fact #13, which is deemed admitted.

- Defendant's fact #14 states: "Plaintiff admitted to sending all of these emails." Plaintiff denies this fact and states: "Mr. Venable testified he did not recall sending many of the allegedly inappropriate emails." This is extremely disingenuous and borders on bad faith on the part of counsel. The record is replete, as set forth above, with evidence, indeed Plaintiff's own testimony, confirming that he sent the emails in question.[90] Plaintiff testified that he apologized when presented with the emails. There is not a shred of evidence in this case that Plaintiff did not send the emails or that

---

[90] Rec. Doc. No. 22-3, Plaintiff's Depo, pp. 151-152, 155-156, 161, 165, 168-169, 171-172, 174, 179, 181, 183-184, 188-189, 192, 199; Rec. Doc. No. 22-4, Cardwell Depo, p. 119.

58686

the emails were doctored or planted; rather, Plaintiff confirmed that each and every email was sent by him using his company email. In his deposition, Plaintiff did testify that he did not recall sending the emails;[91] however, that is not a denial that he actually sent them. Defendant's fact #14 is deemed admitted.

- Defendant's fact #20 states that EnLink searched the email accounts of the nineteen (19) other EnLink employees who received Plaintiff's inappropriate emails. Plaintiff's denial is a lengthy paragraph containing legal arguments and facts not responsive or contrary to the statement asserted by Defendant. Therefore, Defendant's fact #20 is deemed admitted.

- Defendant's fact #21 states that the only EnLink employee that forwarded Plaintiff's inappropriate emails was Larry Leblanc. Plaintiff's "denial" states that Larry Leblanc violated the same policy as Plaintiff. Plaintiff cites several pages of Gautreau's deposition testimony, none of which even mention Larry Leblanc; Cardwell's deposition testimony acknowledging that only Larry Leblanc forwarded three of Plaintiff's emails; and Plaintiff's deposition testimony that Larry Leblanc "was sending emails." Plaintiff's statement does not controvert Defendant's fact #21, and that fact is deemed admitted.

- Defendant's fact #23 states that Larry Leblanc was issued a final written warning and he was required to attend policy training. Plaintiff's denial does not respond to or controvert this fact; rather, Plaintiff argues that Plaintiff was not given the same opportunity for progressive discipline. While Plaintiff's statement is supported by record evidence, it does not, however, controvert Defendant's fact #23, and this fact is deemed admitted.

- Plaintiff's response to Defendant's fact #24 is the same as to #23; for the same reasons, Defendant's fact #24 is deemed admitted.

- Defendant's fact #31 restates that, in his termination meeting, Plaintiff admitted to sending the inappropriate and sexually explicit emails. Plaintiff denies this statement but fails to offer a statement that controverts or refutes

---

[91] *Id.* at p. 314, lines 21-22.

58686

this established fact; rather, Plaintiff submits evidence of other employees' alleged violations of the same policy. Defendant's fact #31 is deemed admitted.

The Court now turns to the applicable legal standards in this case.[92]

## B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[93] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[94] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[95] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[96] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[97]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a

---

[92] *See* note 118, *infra.*
[93] Fed. R. Civ. P. 56(a).
[94] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[95] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[96] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[97] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
58686

reasonable jury could return a verdict for the nonmoving party.'"[98]  All reasonable factual inferences are drawn in favor of the nonmoving party.[99]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[100]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[101]

### C. Discrimination under the ADEA

The ADEA makes it "unlawful for an employer to fail or refuse to hire ... any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[102] The United States Court of Appeals for the Fifth Circuit has held that when making a claim of age discrimination, "the plaintiff has the burden of persuasion to show 'that age was the **'but-for' cause** of [his] employer's adverse action.'"[103]

A plaintiff may prove a case by direct or circumstantial evidence.[104]  Evidence is direct when it "proves the fact of discriminatory animus without inference or

[98] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[99] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[100] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[101] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[102] 29 U.S.C. § 623(a)(1).
[103] *Salazar v. Cargill Meat Sols. Corp.,* 628 F. App'x 241, 244 (5th Cir. 2015) (citing *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir.2010) (quoting *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009))(emphasis added).
[104] *Allain v. Board of Supervisors of University of Louisiana System*, 81 F.Supp.3d 502, 509 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).
58686

presumption."[105]  Evidence is circumstantial when an inference is required for the evidence to tend to prove discriminatory animus.[106]  For comments to constitute direct evidence of age discrimination, they must be "1) age related; 2) proximate in time to the termination; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue."[107]

Where the Plaintiff lacks direct evidence of discrimination, the courts apply the burden-shifting analysis of *McDonnel Douglas*.[108]  Under this analysis, the Plaintiff must make out a *prima facie* case of discrimination by showing that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."[109] Once the plaintiff makes out a *prima facie* case, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision."[110] If the employer satisfies this obligation, the plaintiff is "afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual."[111]

---

[105] *Id.* (quoting *Terry v. Promise Hosp. of Ascension, Inc.*, CIV.A. No. 13–128–SDD, 2014 WL 4161581, at *5 (M.D.La. Aug. 19, 2014)).
[106] *Id.* (citing *Terry*, 2014 WL 4161581, at *5).
[107] *Id.* (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996) (*abrogated on other grounds by Spears v. Patterson UTI Drilling Co.*, 337 Fed.Appx. 416, 419 (5th Cir. 2009))).
[108] *Reeves*, 530 U.S. at 142-43.
[109] *Jackson*, 602 F.3d at 378 (internal quotation marks omitted).
[110] *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007).
[111] *Moss v. BMC Software, Inc.*, 610 F.3d at 922 (5th Cir. 2010).
58686

1.  <u>Direct Evidence/Stray Remark Doctrine</u>

Where a plaintiff "presents direct evidence of discrimination, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'"[112] Fifth Circuit precedent further instructs that, in determining whether a workplace comment constitutes "direct evidence" of discrimination, rather than a "stray remark," a court must consider whether the comment: (1) relates to the plaintiff's protected characteristic; (2) was made proximate in time to the challenged employment decision; (3) was made by an individual with authority over the challenged employment decision; and (4) relates to the challenged decision.[113] "Generally, '[d]irect evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption.'"[114]

The Fifth Circuit recently opined that, "[i]n direct evidence cases, comments must meet a **demanding standard** because the plaintiff relies on them 'to prove the entire case of discrimination.'[115] For age-related comments to show [discriminatory intent] in a direct evidence case, they must be more than 'stray remarks.'"[116] Further, "[t]o rise above the level of a stray remark, an age-related comment must 'be direct and unambiguous,

---

[112] *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015) (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).

[113] *Id.* (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)).

[114] *Martin v. Winn-Dixie Louisiana, Inc.*, 132 F.Supp.3d 794, 817 (M.D. La. 2015)(quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005)).

[115] *McMichael v. Transocean Offshore Deepwater Drilling, Incorporated*, 934 F.3d 447, 457 (5th Cir. 2019)(quoting *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015))(emphasis added).

[116] *Id.* (citing *E.E.O.C. v. Tex. Instruments*, 100 F.3d 1173, 1181 (5th Cir. 1996)("This court has repeatedly held that 'stray remarks' do not demonstrate age discrimination.").

58686

allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'"[117]

Plaintiff claims that he has presented direct evidence of over three years of age discriminating comments made about him and to him.  Plaintiff claims that Mike Leblanc, Gibson, Vaughn, and Cormier made "admissions" that they intended to "get rid" of Plaintiff based on his age, and he further claims that all four of these supervisors "openly confessed" to this illegal bias.  Plaintiff cites no record evidence for this argument, which is wholly unsupported by the record and sworn testimony and/or statements by these four supervisors.[118]

Further, Plaintiff relies heavily on an alleged "barrage" of comments relating to Plaintiff's age made by younger co-workers, which include comments that Plaintiff was "old," and "old fart," "senior," "stupid," he "ma[de] too much money," and was "spoiled."[119] As a matter of law, this evidence, even taken as true, does not constitute direct evidence under the law for two reasons.  First, most of these comments do not relate to Plaintiff's protected class.  The Fifth Circuit has held that, "[i]n order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing [the trier of fact] to conclude without any inferences or presumptions that age was an impermissible factor in the [personnel] decision."[120]  Thus, being called stupid,

---

[117] *Id.* (quoting *Tex. Instruments*, 100 F.3d at 1181).
[118] Counsel is cautioned that unsupported contentions are viewed with great disfavor by the Court and may invite the imposition of sanctions.
[119] Rec. Doc. No. 34, p. 11.
[120] *Logan v. Holder*, 2016 WL 2354846, at * 5 (W.D. La. May 3, 2016)(quoting *E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (citing *Bodenheimer v. PPG Industries Inc.*, 5 F.3d 955, 958 (5th Cir. 1993))(internal quotation marks omitted).
58686

spoiled, and accused of making too much money are not age-related comments.[121]  Also, the Fifth Circuit has specifically held that the ADEA "prohibits discrimination on the basis of age, *not salary or seniority*."[122] Further, use of the word "senior" is likewise not direct evidence of age-based animus as it could be interpreted as "experienced" or reference years of employment just as easily as old age.[123]

As to the "constant" questions regarding retirement, it is well-settled that questioning an employee about retirement does not constitute direct evidence of age discrimination.  In *Covington v. Keith D. Peterson & Co., Inc.*,[124] the plaintiff alleged that "she was repeatedly questioned on many occasions as to when she would retire from employment."[125]  However, based on Fifth Circuit precedent, the court held "this is not direct evidence of age discrimination 'because it requires one to infer that [she] was fired because of [her] age based on [her employer's] comment that it was time for [her] to retire.'"[126]  The *Covington* court continued:  "'There is a link between retirement and age, but it is not a necessary one.'"[127]  Thus, the court found that the evidence offered was

---

[121] *See e.g.*, *Breaux v. Rosemont Realty*, 2018 WL 3235416, at *8 (W.D. La. July 2, 2018)(where terms "papa hen" was derived from term "mother hen" and court found  comment was defined as "a person who assumes an overly protective maternal attitude." Webster's New Collegiate Dictionary 774 (9th ed. 1989)); *Simmons v. Greyhound Lines, Inc.*, 2020 WL 61039, at *7 (where court found that calling employee "incompetent" was not an age-related comment.

[122] *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir. 1995) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609-15 (1993)) (emphasis added).

[123] *See e.g.*, *Taylor v. Albermarle Corporation*, 2007 WL 9700753, at *12 (M.D. La. Feb. 13, 2007)("the Fifth Circuit has held that 'seniority' and 'age' are unrelated for ultimately proving age discrimination since the term "seniority" refers to years of service rather than age.").

[124] 2011 WL 6152861 (W.D. La. Dec. 12, 2011).

[125] *Id.* at *2.

[126] *Id.* (quoting *Martin v. Bayland Inc.*, 181 Fed. Appx. 422, 423-424 (5th Cir. 2006) (Finding that an employer's comment that "I think it's time to hang it up and you-for you to retire" did not constitute direct evidence of age discrimination).

[127] *Id.* (quoting *Martin*, 181 Fed. Appx. at 424; *see also Scott v. Potter*, 182 Fed. Appx. 521, 526 (6th Cir. 2006) (Finding the statement "Why don't you retire and make everybody happy" was not direct evidence of age discrimination.)).

58686

circumstantial, and the circumstantial evidence framework which triggers the *McDonnell Douglas* burden-shifting analysis applied.

Finally, after excluding non-age-related comments, being called "old" and "old fart" by co-workers without any decision-making authority over Plaintiff's termination does not constitute direct evidence under the law. As set forth above, one of the considerations in distinguishing direct evidence from a stray remark is whether the comment was made by an individual with authority over the challenged employment decision. To the extent Plaintiff relies on age-related comments made by younger co-workers who were not in positions of authority over Plaintiff, nor is there evidence that these younger employees were in a position to influence the termination decision, such comments do not constitute direct evidence of age discrimination.[128]

Notwithstanding the above, the Court finds that Plaintiff narrowly escapes summary judgment by demonstrating a material issue of genuine fact regarding the motive of Mike Leblanc, an undisputed decisionmaker. Although Mike Leblanc submitted a sworn declaration denying any knowledge of Plaintiff's age when he accepted and approved Cardwell's termination recommendation,[129] Gautreau testified that, throughout 2016 and 2017, Mike Leblanc directly "threatened" him to "get rid" of the "senior guys," which Leblanc interpreted as older and more experienced because they were "overpaid" and "troublesome."[130] This statement, which is disputed, could constitute direct evidence of discrimination as it appears to be age-related by context, made by an individual with

---

[128] *See Williams v. Clegg's Nursery*, 2016 WL 3702978, at *11 (M.D. La. July 7, 2016)("All of the comments relate to Plaintiff's protected class, but the comments by coworkers do not satisfy the requirement that comments be made by a person with control over the decision to terminate the Plaintiff.").
[129] Rec. Doc. No. 22-6, Michael Leblanc Declaration, p. 2.
[130] Rec. Doc. No. 22-7, Gautreau Depo, p. 61, 74-75.
58686

authority over the employment decision at issue, and related to Plaintiff's termination. However, Plaintiff fails to point to summary judgment evidence establishing that any of these comments were "proximate in time to the employment decision."[131]   Although Gautreau testified that these comments were made routinely throughout 2016 and 2017 by Mike Leblanc and Plaintiff's other supervisors, Cormier, Vaughn, and Gibson, Plaintiff provides no evidence of the precise timing of the comments; thus, this vague assertion fails to meet the demanding direct evidence standard that such comments were made proximately near Plaintiff's termination.[132]

Recently, this Court addressed similar complaints in *Simmons v. Greyhound Lines, Inc.*,[133] wherein the plaintiff alleged age discrimination by his employer based on his allegations that his supervisor  was "constantly telling [him] that [he] was old enough to be her father and that [he] need[ed] to retire and that [he] was incompetent."[134] The plaintiff also testified that his supervisor said he was old enough to be her father "about three, four times a month," and she allegedly told the plaintiff, with no witnesses present, that "she needed some white – young white person or young white people in there. And she just need [sic] young folks."[135]   This Court held that, while the plaintiff vaguely asserted that these comments were made "constantly," which he defined as "about three, four times a month,"  the plaintiff never specified a time near his discharge; thus, he failed to meet his burden to show that the comment was proximately related to his termination

---

[131] *See* note 92, *supra*.
[132] *See e.g.*, *Williams v. Clegg's Nursery, LLC*, 2016 WL 3702978, at *11 (M.D. La. July 7, 2016)(Plaintiff who asserted she was "constantly" subjected to age-related comments submitted "no evidence in the record that the statements cited by Plaintiff occurred near the time of her termination.").
[133] 2020 WL 61039 (M.D. La. Jan. 6, 2020).
[134] *Id.* at *4 (internal quotation marks omitted).
[135] *Id.* (internal quotation marks omitted).
58686

because he failed to establish when such comments were actually made.[136]       Thus, the Court found these alleged comments to constitute circumstantial evidence and proceeded to an analysis under the *McDonell Douglas* burden-shifting framework.[137]

For the same reasons, the Court finds that Plaintiff has submitted circumstantial evidence of age discrimination, and the Court will proceed under *McDonell Douglas*. However, Defendant has conceded that Plaintiff can establish a *prima facie* case of age discrimination by failing to argue these elements and proceeding directly to its presentation of a legitimate, nondiscriminatory reason for Plaintiff's termination; thus, the Court need not address those elements.

### 2.    Legitimate Non-Discriminatory Reasons for Termination

Defendant maintains that Plaintiff violated company policy when he used his company-provided email account to send sexually explicit, offensive, and otherwise inappropriate messages to his co-workers.  Based on the discussion above, the following facts have been deemed admitted for purposes of this motion: EnLink's Anti-Discrimination and Anti-Harassment policy prohibits (1) Displaying, viewing, possessing or bringing to the workplace…graphics or other materials or objects that have an offensive connotation; (2) Written or graphic material or objects that are sexually-oriented, obscene, criticize or show hostility or aversion toward an individual or group; and (3) Offensive messages conveyed through company equipment via email, phone (including voice messages), text messages, tweets, blogs, social networking sites or other means."[138]

---

[136] *Id.* at *9 (internal citation omitted).
[137] *Id.*
[138] Rec. Doc. No. 22-3, pp. 361-362.
58686

In approximately February or March of 2017, EnLink's Human Resources department investigated Ricky Bellard after receiving reports that Bellard was threatening other EnLink employees.[139] While searching Bellard's e-mail inbox, Cardwell discovered e-mail messages with sexually explicit pictures sent to Bellard by Plaintiff.[140] Cardwell then investigated Plaintiff's Company e-mail and discovered that Plaintiff sent numerous inappropriate e-mails to his coworkers, third-parties, and himself over the preceding year.[141] Specifically, some of the e-mails contained graphic photographs of nude women with exposed genitals, breasts or buttocks; while others contained images of male genitalia and/or sexual references.[142] Plaintiff admitted to sending all of these emails.[143]

Plaintiff attempts to suggest he was unaware of the policies prohibiting his acknowledged violations. First, Plaintiff highlights that he was terminated based on violations of both the Handbook and the Email and Internet Access Policy. [144] Indeed, Cardwell admitted that she did not have documentation to prove that Plaintiff had received the Email and Internet Access Policy or been trained on same.[145] However, that Plaintiff may not have been provided the Email and Internet Access Policy does not create an issue of fact regarding the legitimacy of the proffered termination reason because the Handbook, which Plaintiff acknowledged receiving and being trained on,[146] undisputedly

---

[139] Rec. Doc. No. 22-4, Cardwell Depo, pp. 30, 40-45.
[140] *Id.* at p. 31.
[141] *Id.*, Exhibit 4 attached thereto.
[142] Rec. Doc. No. 22-3, Plaintiff's Depo, p. 158, and Ex. 6, attached thereto; pp. 163-164, and Ex. 7 attached thereto; p. 175, and Ex. 11 attached thereto; p. 180, and Ex. 12 attached thereto; p. 182, and Ex. 13 attached thereto; p. 152; and Ex. 5 attached thereto; p. 166, and Ex. 8 attached thereto; p. 168-169, and Ex. 9 attached thereto; p. 172, and Ex. 10 attached thereto. *See* Rec. Doc. No. 22-10 (UNDER SEAL).
[143] *Id.* at pp. 151, 155-156, 161, 165, 168-169, 171-172, 174, 179, 181, 183-184, 188-189, 192, 199; Rec. Doc. No. 22-4, Cardwell Depo, p. 119-120.
[144] Rec. Doc. No. 22-4, Cardwell Depo, pp. 32-48, Exhibits 1,2, & 3 attached thereto.
[145] *Id.* at pp. 32-44.
[146] Rec. Doc. No. 22-3, Plaintiff's Depo, p. 104, lines 16-23.
58686

prohibits the same conduct.  Plaintiff's argument that he was fired for a "false violation of policy,"[147] is disingenuous and is undermined by Plaintiff's own testimony and the record evidence in this case.

Plaintiff further seeks to challenge the legitimacy of the decision to terminate him by arguing that it was a "setup."  Plaintiff contends that, when he told co-worker Laine LeBlanc about his termination based on the emails, LeBlanc responded that "You know that was a setup."[148]  When asked to explain what this meant, Plaintiff testified:  "Well, he didn't have to say.  We all think I was set up because I was resisting Eddie and them.  I mean, these emails were pulled out by our IT guys that was looking up dirt to get rid of me, from what I was told."[149] Plaintiff then testified that he had been told the same thing by Gautreau:

> A:      Jeff told me … "Well that ain't none of your fault.  They set you up on this."  I'm like, "What?"  And he commenced to telling me how out IT guy, Bart Domainge, was digging through emails and printing stuff and so –
>
> Q:      Did he say how he knew that?
>
> A:      Yeah.  He – Jeff works in the front office, and he has – he's – he's got a bunch of computer software up there, and he said that this Bart Domainge was into everybody's emails, changing out software, making copies, and he found that – he found that a little bit fishy.  So when this happened to me, he – he said he'd put two and two together, and he thought that's what was going on.
>
> Q:      He thought that was going on, but he wasn't sure?
>
> A:      He sounded like he was sure.  He told me, make no doubt about it, that's what happened.  So he's telling me he's sure.[150]

---

[147] Rec. Doc. No. 34, p. 7.
[148] Rec. Doc. No. 22-3, Plaintiff's Depo, p. 230, lines 15-16.  Notably, this is inadmissible hearsay.
[149] *Id.*, at lines 20-24.
[150] *Id.* at p. 231, lines 3-25 through p. 232, lines 1-2.  Notably, this is inadmissible hearsay.
58686

However, when turning to Gautreau's testimony on this same issue, Gautreau admits that this theory is based on his opinion and speculation alone, and he has no proof for this belief. Gautreau testified that he was disturbed to learn that IT had access to everyone's computers, and he was concerned when supervisors knew the contents of emails Gautreau received before he had opened the emails. He testified that he asked Vaughn about this, and Vaughn allegedly responded that IT had given him (Vaughn) access to every employee's email.[151] Gautreau further explained:

Q:     And it was based on that that you told Mr. Venable that Bart Domingue was looking for emails to get rid of him?

A:     No. Chad Vaughn told me that Bart Domingue had access and could give him access to look at everybody's e-mails inside of the facility.

Q:     Okay.

A:     And I knew it was happening, because it was happening to me.

Q:     Do you remember telling Mr. Venable that Bart Domingue was looking through his e-mails for a reason to get rid of Mr. Venable?

A:     **I don't remember telling Venable – Mr. Venable that Bart Domingue was specifically looking at his e-mails for reasons to find termination with him**."

Q:     Okay. Just generally, you told Mr. Venable that Bart Domingue was looking through your e-mails?

A:     I told him what was happening with me.
                              . . .
Q:     Who do you believe Mr. Venable was targeted by?

A:     Whoever was giving IT directions to look at e-mails and go through everybody else's files –
                              . . .

---

[151] Rec. Doc. No. 22-7, Gautreau Depo, pp. 136-137.
58686

Q:     Do you have any idea who that was?

A:     Sure.

Q:     Who was that?

A:     Well, **this is an opinion**, right.

Q:     Yes.

A:     This isn't – **I don't have the proof to say that conclusively it happened.  But if I had to take a best guess**, I would say it would be Eddie Cormier and Greg Gibson.[152]

The argument that this investigation into Bellard's, and subsequently Plaintiff's, emails was a "setup," is simply unsupported by any competent summary judgment evidence.   Plaintiff bases his "knowledge" of this setup on the hearsay of others, specifically Gautreau, whose own testimony confirms that this "opinion" is merely his own speculation for which he has no proof.  While the Court must construe all evidence in the light most favorable to Plaintiff, the Court will not infer the existence of evidence not presented.[153]   "[U]nsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence."[154]

Accordingly, the Court finds that Defendant has submitted summary judgment evidence of a legitimate, non-discriminatory reason for terminating Plaintiff.[155]  The Court now turns to Plaintiff's contention that these reasons were a pretext for age discrimination.

---

[152] *Id.* at pp. 136-138 (emphasis added).
[153] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).
[154] *Liberty Ins. Corp. v. Dixie Elec., L.L.C.*, 637 Fed. Appx. 113, 116 (5th Cir. 2015)(citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994)).
[155] *See Cervantez v. KMGP Services Co., Inc.*, 349 Fed. Appx. 4, 9 (5th Cir. 2009)(Fifth Circuit affirmed that "violation of [employer's] computer-use policy – constitutes a legitimate, nondiscriminatory reason for Cervantez's discharge.").
58686

3.    <u>Pretext</u>

"At [the final] step of the *McDonnell Douglas* analysis, an ADEA plaintiff must prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."[156] "At the summary judgment stage, the question is whether the plaintiff has shown that there is a genuine issue of material fact as to whether this reason was pretextual."[157] "A plaintiff may show [a genuine issue of material fact regarding] pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."[158] The key issue in determining pretext is whether the employer's justification, "even if incorrect, was the real reason for the plaintiff's termination.　A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[159] "At the end of the day, the pretext inquiry asks whether there is sufficient evidence demonstrating the falsity of the employer's explanation, taken together with the prima facie case, to allow the jury to find that discrimination was the but-for cause" of the termination of the employee.[160]　Notably, "[c]ourts '"do not try ... the validity of good faith beliefs as to an employee's competence. Motive is the issue.""'[161]　Moreover, "self-serving conclusions

---

[156] *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (citations and quotations omitted).
[157] *Palacios*, 2015 WL 4732254, at *3 (citation omitted).
[158] *Id.* (citation omitted).
[159] *Goudeau*, 793 F.3d at 476 (citations, quotations, and alterations omitted).
[160] *See id.* at 478.
[161] *Cervantez*, 349 Fed. Appx. at 9 (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)(quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir.1991)); *see Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir.1988) ("The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated. Even if the trier of fact chose to believe an employee's assessment of his performance rather than the employer's, that choice alone would not lead to a conclusion that the employer's version is a pretext for age discrimination." (citation omitted))).
58686

are insufficient" to establish pretext, and "[s]ubjective beliefs alone will not establish pretext."[162]  To satisfy the burden of establishing pretext, a plaintiff must "must present more than stray remarks, statements by non-decision makers, or opinions."[163]

Plaintiff argues that the following constitute evidence of pretext:  (1) the constant comments by his supervisors Vaughn, Cormier, and Gibson regarding his retirement; (2) the disparate treatment of younger employees who were not immediately terminated for violating the same policy in the Handbook; (3) EnLink's failure to apply a progressive discipline policy to Plaintiff when it applied same to other offending employees.

*a.*     *Stray Remarks*

The Fifth Circuit "has repeatedly held that 'stray remarks' do not demonstrate age discrimination."[164]  Additionally, "stray remarks cannot be the only evidence of pretext."[165] However, courts must look to the frequency of remarks and whether they are accompanied by other evidence of age-based animus in making this determination for the purpose of pretext.  "A 'stray' remark is a remark which is isolated (i.e., not accompanied by other remarks similar in nature) or not accompanied by other evidence indicative of discriminatory animus."[166] "Conversely, remarks are not considered stray and may be

---

[162] *Minnis v. Board of Sup'rs of Louisiana State University and Agricultural and Mechanical College*, 55 F.Supp.3d 864, 881 (M.D. La. Oct. 21, 2014)(citing *Price*, 119 F.3d at 337 (age discrimination); *Ray v. Tandem*, 63 F.3d 429, 434 (5th Cir.1995)).

[163] *Minnis*, 55 F.Supp.3d at 881 (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41–42 (5th Cir.1996).

[164] *Broussard v. Jazz Casino Co. LLC*, 2018 WL 6046171 at *3 (E.D. La. Nov. 19, 2018)(quoting *Tex. Instruments*, 100 F.3d at 1181)).

[165] *Id.* (citing *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003); *Paulissen v. MEI Techs., Inc.*, 942 F. Supp. 2d 658, 670–71 (S.D. Tex. 2013)).

[166] *Shockey v. Universal Cable Holdings, Inc.*, 2019 WL 77351, at *4 (quoting *Bumstead v. Jasper Cty.*, 931 F. Supp. 1323, 1334 (E.D. Tex. 1996))(internal quotation marks omitted).

58686

effective to defeat a motion for summary judgment when they occur with some frequency or when they exist in combination with other evidence of age-based animus."[167]

Plaintiff testified that he was constantly asked about when he was going to retire by Vaughn, Cormier, and Gibson.[168]   As set forth above, general comments asking an employee about retirement are not direct evidence of age discrimination but can be circumstantial.  Further, they are not always considered stray remarks.  Indeed, the record in this case demonstrates genuinely disputed facts regarding the frequency of these alleged comments made by Plaintiff's supervisors.  Moreover, these comments do not stand alone but are accompanied by other evidence of age-based animus.  First, the retirement comments must be viewed within the context of Gautreau's testimony that he was repeatedly directed by the persons allegedly making these comments to "get rid" of the "senior" or "older" operators.[169]   Second, Gautreau testified that he was directed to "adjust" Plaintiff's (and other "senior" employees') performance evaluations downward so that younger employees would have the opportunity for raises and bonuses, and Gautreau testified that he complied with this directive.[170]   Specifically, Gautreau testified:

> "I was told to adjust my performance evaluations. … At the end of the year when we did final performance evaluation reviews, those reviews were substantial because they were – they were the outcome of company bonuses and merit raises.  And Mr. Venable was my top performer, and I was asked several times to regrade his evaluation to make room for somebody else's pay going up."[171]

---

[167] *Id.* (quoting *Bumstead*, at 1334).
[168] Rec. Doc. No. 22-3, Plaintiff's Depo, pp. 48, 50, 60 (Cormier asked him about retirement "pretty much, every time he came around"), 63 (Cormier remarked to Plaintiff that "when you want to change the way a plant works, you start at the top and you work your way down."), 66, 75-76, 136, 140, 245.
[169] Rec. Doc. No. 31-3, Gautreau Depo, pp. 59-61; 81-87.
[170] Rec. Doc. No. 22-7, Gautreau Depo, pp. 183-185.
[171] *Id.* at p. 183, lines 18-22 through p. 184, lines1-3.
58686

When asked when this directive happened, Gautreau testified that "[i]t happened several times over the years."[172]

In cases involving similar fact patterns, Louisiana federal district courts have found pretext evidence sufficient to overcome summary judgment. For example, in In *Allain v. Board of Supervisors of the University of Louisiana System*, an employee of the radio station operated by the university filed a claim of age discrimination, among other claims, when she was terminated at the age of 59.[173] Following the plaintiff's termination, she was immediately replaced by a 26-year-old female.[174] The plaintiff testified that, prior to her termination, she heard a conversation between the Dean of the College of Arts and Sciences ("the Dean") and her direct supervisor Joel Willer ("Willer") wherein the Dean told Willer that "he wished he could get rid of all the old professors, but that he couldn't because they were tenured."[175] Shortly after Willer became the plaintiff's direct supervisor, Willer told another radio station employee, Ray Davidson ("Davidson") that he intended to get rid of the plaintiff and replace her with a younger employee.[176] Davidson claimed that Willer, referring to the plaintiff, told him on numerous occasions that he wanted "new blood."[177] Although Willer testified that he terminated the plaintiff based on her poor work performance and insubordination, and not based on her age, Willer also stated that the Dean had instructed him to fire the plaintiff a year before he did.[178]

---

[172] *Id.* at p. 184, line 24.
[173] 81 F.Supp.3d 502 (W.D. La. 2015).
[174] *Id.* at 507.
[175] *Id.*
[176] *Id.*
[177] *Id.*
[178] *Id.*

58686

Ultimately, in denying the university's motion for summary judgment, the court held:

Allain can overcome summary judgment on her ADEA claim because she has presented direct evidence of age discrimination. Davidson, Allain's former co-worker, avers that Willer told him on several occasions that his goal was to terminate Allain and replace her with a considerably younger female. Davidson also avers that Willer told him numerous times, in reference to Allain, that he wanted "new blood." These comments constitute direct evidence of age-related discriminatory animus because they are age-related, were made by an individual with authority to terminate Allain (Willer), and were certainly related to her termination. The only questionable element needed to satisfy the Brown test for direct evidence is the temporal proximity prong.

. . .

Even if Davidson's statements do not constitute direct evidence, Allain can still overcome summary judgment because she has established a prima facie case of age discrimination and can rebut ULM's proffered legitimate, non-discriminatory reasons as pretextual.

. . .

ULM cites her underperformance and insubordination as its legitimate, nondiscriminatory reasons. However, even assuming that Davidson's testimony does not constitute direct evidence, his testimony certainly provides sufficient evidence of pretext to rebut ULM's justifications. Moreover, there is ample other evidence indicating that ULM's legitimate, nondiscriminatory reasons are pretextual. First, ULM's contention that it had decided to terminate Allain for underperformance in October of 2010 is questionable because Allain was not, in fact, terminated until after she returned from FMLA leave. Second, ULM terminated two other KEDM employees and replaced them with younger individuals. Third, Allain's **testimony that she overheard Dean Cass inform Willer that he wished to get rid of tenured professors and replace them [with] younger employees creates factual issues as to whether ULM fosters a cultural bias against older employees and unlawfully acted on that bias by terminating Allain**.[179]

---

[179] *Id.* at 510-511 (internal citations omitted)(emphasis added).
58686

A similar claim was asserted in *Dantin v. Ochsner Clinic Foundation*,[180] where the district court for the Eastern District of Louisiana denied summary judgment to an employer sued under the ADEA. The plaintiff in *Dantin* claimed that, throughout her career, she had received only positive performance evaluations and had qualified for all bonuses until 2015, when her supervisor seemed to target the plaintiff, who was 63 years old at the time, and another 63-year-old employee during a staff meeting.[181] The plaintiff was also placed on a performance improvement plan.[182] The plaintiff claimed that her employer-CEO instructed her supervisor to terminate long-term employees like the plaintiff. The plaintiff offered a declaration from her supervisor as evidence of discrimination:

> "Annette Adams, like [Plaintiff], was a senior management level employee, over the age of 40, at St. Anne that Tim Allen wanted me to terminate." "Notwithstanding [Plaintiff's] performance, Tim Allen wanted me to terminate [Plaintiff's] employment along with several other employees over the age of forty, without any consideration for their actual job performance." "When pressed to terminate these older employees, I expressed to Mr. Allen that I thought what he was attempting to force me to do was wrong." "It is my belief that one of the reasons why I was terminated was because I refused to terminate [Plaintiff] and other senior employees over the age of 40 at St. Anne General Hospital."[183]

The court found that these statements did not constitute direct evidence of age discrimination:

> In analyzing whether these allegations constitute direct evidence of discrimination, the Court first notes that Plaintiff does not present any evidence of a comment made by Allen. Plaintiff does not proffer a statement by Allen that used the term "long-term" or allege that Allen made a direct comment about employees over 40. Rather, Vedros summarizes what she believed Allen wanted her to do. This is not a comment as typically analyzed

---

[180] 2019 WL 2089381 (E.D. La. May 13, 2019).
[181] *Id.* at *1.
[182] *Id.*
[183] *Id.* at *13.
58686

in the Fifth Circuit as direct evidence. Further, even if Allen made such comments, they are not direct and unambiguous. A reasonable jury would have to draw inferences or make presumptions about what Allen may have intended. Therefore, Vedros' interpretations of her discussion with Allen do not meet the criteria for direct evidence and are thus insufficient to defeat summary judgment. Accordingly, the Court moves to Plaintiff's circumstantial evidence of age discrimination.[184]

After the plaintiff established a *prima facie* case, the defendant presented a legitimate, nondiscriminatory reason for the plaintiff's termination; thus, the burden shifted to the plaintiff to demonstrate evidence of pretext. The court found that the plaintiff had carried her burden:

> Here, Plaintiff has shown that there are genuine issues of material fact in dispute. Defendant avers that Plaintiff's poor performance was the reason for terminating Plaintiff, but Vedros' testimony reveals that even when Plaintiff showed improvement in her performance and had satisfied the PIP, Allen still wanted to terminate Plaintiff. As Plaintiff's supervisor, Vedros believed that Plaintiff had improved enough that termination was not warranted, but, according to Vedros, Allen insisted that Plaintiff and other older employees be terminated despite their performance. This is an issue of fact on whether Allen targeted employees based on their age and disregarded performance.[185]

In *Rogers v. City of Baton Rouge*,[186] a case decided here in the Middle District of Louisiana, the plaintiff, a police officer who had achieved the rank of Lieutenant in 2011, was transferred and demoted multiple times and disciplined for refusing to take a test associated with a law class she had previously been required to take.[187] The plaintiff complained that the adverse employment actions she suffered were because of her race and age. Further, the plaintiff explained that she refused to take the test because, although it was usually administered within a week of taking the class, the plaintiff was

---

[184] *Id.*
[185] *Id.* at *18.
[186] 2016 WL 4035328 (M.D. La. July 25, 2016).
[187] *Id.* at *1 - *2.
58686

being asked to take the test nearly a month later, without explanation for the delay.[188] The plaintiff maintained that, throughout this time period, she was subjected to ageist comments from her co-workers and supervisors.[189]  The court found that the plaintiff had presented evidence sufficient to overcome summary judgment.

> First, Plaintiff points to evidence that she was subjected to ageist comments and repeated questioning regarding her plans to retire. According to the Investigative Report, prepared at the conclusion of Defendant's investigation into Plaintiff's internal complaint of discrimination, in her internal complaint, Plaintiff alleged that "Lt. Newman said, 'You are a 63 [year] old maw-maw who should be home playing with the grandchildren.'" (R. Doc. 29-14 at 2). During the internal investigation, Lt. Newman, who trained Plaintiff during her transition to Uniform Patrol, denied making this comment. (R. Doc. 29-14 at 7). Plaintiff also told human resources that Lt. Newman stated: "I just can't understand why all of the ole timers are still in the department holding up space. They should just move on and give others opportunity." (R. Doc. 29-14 at 7). When questioned during the investigation, Lt. Newman did not expressly deny that the statement was made. Instead, he responded, "It wasn't me that said that, there was a round table discussion among officers that were talking about retirement." (R. Doc. 29-14 at 7).[190]
>
> . . .
>
> Moreover, Plaintiff claims that she was constantly questioned and "badgered" about retirement. (R. Doc. 29-14 at 2). Plaintiff alleged that Captain Candace Graham suggested that she retire. When asked by the internal investigator, Cpt. Graham stated: "She and I were talking and she said something about being frustrated[.] I assumed we were talking officer to officer and it was a brief conversation. I said, 'Well honey, why don't you just retire.'" (R. Doc. 29-14 at 4). While Cpt. Graham admitted making the statement, she denied any discriminatory motivation. Captain Daryl Rice was similarly asked about allegedly questioning Plaintiff about retirement. (R. Doc. 29-14 at 5). According to the internal investigation, Cpt. Rice responded: "I did talk to her about my retirement date and I told her that I know when it's time to leave and that my date was approaching fast and you [ (Plaintiff) ] need to examine yourself and see if it is your time to leave." (R. Doc. 29-14 at 5). Plaintiff further accused Lieutenant Todd Weishar of "badgering" her about retirement during meetings in front of Plaintiff's peers, which he denied. (R. Doc. 29-14 at 8).

---

[188] *Id.* at *2.
[189] *Id.*
[190] *Id.* at *8.

58686

One witness interviewed during the internal investigation, Lieutenant Carl Dunn, stated that, based on his observations, "Lt. Newman and Cpt. Roan [harassed Plaintiff because of her age] by telling her every day that she was going to lose her job and that she needed to retire." (R. Doc. 29-14 at 13). Lt. Dunn also stated that Newman said that Plaintiff "needed to just go home." (R. Doc. 29-14 at 13). Corporal Myron Daniels similarly stated that Plaintiff "explained to me that Officers were implying that she has been in the department for a long time and that it was time for her to retire. [Plaintiff] was offended by the remarks." (R. Doc. 33-3 at 5). Based on his observations and attendance at several meetings between Plaintiff and her supervisors, Corporal Daniels explained: "I think all of the respondents played a part of discriminating based on Age in the aspect of retirement." (R. Doc. 29-14 at 13); (R. Doc. 33-3 at 6).[191]

The court determined that the plaintiff had presented evidence establishing a genuine issue of material fact as to whether she was treated adversely because of her age, and "[w]hich version of events is more credible is a question for the trier of fact – not this Court at the summary judgment stage."[192]

Applying the same analysis and reasoning discussed above, the Court finds that Plaintiff has presented pretext evidence such that summary judgment is improper. Considering Plaintiff's testimony regarding the frequency of the retirement comments along with other evidence of an age-based animus by those with authority over Plaintiff, the Court finds that Plaintiff has presented sufficient evidence of pretext to overcome summary judgment on Plaintiff's age discrimination claim. There are genuinely disputed facts regarding EnLink's motive in Plaintiff's termination, and such disputes must be resolved by the jury.

---

[191] *Id.* at *9.
[192] *Id.*
58686

### b. Disparate Treatment/Proper Comparators

Although the Court has found that Plaintiff has demonstrated material issues of fact of pretext sufficient to overcome summary judgment on his age discrimination claim, the Court will address Plaintiff's disparate treatment allegations. For the following reasons, the Court finds that Plaintiff's purported disparate treatment evidence is not competent evidence of pretext. Plaintiff maintains that "Gibson, Vaughn, Byerly, Petite, Savage, Schexnayder, and Larry Leblanc received alternative forms of discipline although they possessed, viewed, and brought into the workplace inappropriate/sexually explicit images on their work computers, phones, and/or emails."[193]

To show that a similarly situated employee was treated differently and that the difference in treatment is a pretext for discrimination, the conduct at issue must be "nearly identical."[194] Courts within the Fifth Circuit define "similarly situated" narrowly.[195] In evaluating whether an alleged comparator is similarly situated,

> "The employment actions being compared will be deemed to have been taken under **nearly identical circumstances** when the employees being compared held the **same job or responsibilities**, **shared the same supervisor** [,] or had their **employment status determined by the same person**[.]"[196] "Employees with different supervisors, who work for different divisions of a company ... generally will not be deemed similarly situated."[197] The Fifth Circuit has further explained, that "employees who have different work responsibilities ... are not similarly situated."[198]

---

[193] Rec. Doc. No. 34, p. 13.

[194] *Moore v. Angus Chemical Co.*, 2008 WL 4491592 at *5 (W.D. La. Oct. 1, 2008)(citations omitted).

[195] *See Horton v. G4S Secure Solutions (USA), Inc.*, No. 16-544-SDD-EWD, 2018 WL 1997535 at *5 (M.D. La Apr. 27, 2018)(citing *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F.Supp.2d 581, 593 (S.D. Tex. 2012); *see also Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 856-57 (S.D. Tex. 2010)).

[196] *Horton*, 2018 WL 1997535 at *5 (quoting *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012)(quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009))).

[197] *Id.* (quoting *Lee*, 574 F.3d at 259 (citing *Wyvill v. United Cos. Life Ins.*, 212 F.3d 296, 302 (5th Cir. 2000))(emphasis added).

[198] *Id.* (quoting *Lee*, 574 F.3d at 259-260 (citing *Smith v. Walmart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990)).

58686

While Plaintiff presented evidence through Gautreau's testimony that Vaughn and Gibson may have violated the aforementioned policy, Vaughn and Gibson are not proper comparators because, as Plaintiff's supervisors, they are not "similarly situated" to Plaintiff. As to the other, younger employees named, Plaintiff has failed to carry his summary judgment burden of establishing that they are similarly situated for purposes of this finding. Plaintiff does not direct the Court specifically to their ages, job responsibilities, supervisors, or work histories, and the Court is not required to sift through the record to find this information. Moreover, Plaintiff has failed to demonstrate that these employees were disciplined under "nearly identical" circumstances. Plaintiff makes the blanket argument that they were all found to have violated the same policy; however, Plaintiff fails to consider that EnLink has provided evidence distinguishing their conduct from his in terms of severity. The EnLink investigation revealed the employees who had **received** Plaintiff's inappropriate emails, and these employees were given a warning and trained on the policy.[199] Receipt is inarguably less egregious than sending inappropriate emails. Larry Leblanc was found to have sent three of the inappropriate emails, but it was determined that these emails contained inappropriate jokes but not sexually explicit images with nudity. For this conduct, Leblanc was issued a final written warning and was required to attend policy training.[200] Again, while it is true that Leblanc violated the same policy as Plaintiff, it is not unreasonable that EnLink determined this conduct to be less egregious than Plaintiff's. Larry Leblanc is likewise not a proper comparator as Plaintiff testified that he "actually worked at another facility … called Pelican Plant, and he was a

---

[199] Rec. Doc. No. 22-4, Cardwell Depo, p. 54.
[200] *Id.* at pp. 50-51.
58686

process operator."[201]  Plaintiff testified that he recalled receiving inappropriate emails from "other employees that were younger"[202] than him, but this does not establish the content of the emails, when they were sent, or that EnLink knew about them or discovered them in the course of the investigation at issue.  Accordingly, the Court finds that Plaintiff has failed to present competent evidence of disparate treatment with respect to this issue.

### c.    Departure from Progressive Discipline Policy

Plaintiff points to EnLink's failure to follow its progressive discipline policy to his first, and only, infraction with the company as evidence of pretext.  The Fifth Circuit holds that "a plaintiff can also show pretext by showing a departure from standard procedure. But mere deviations from policy, or a disagreement about how to apply company policy, do not show pretext."[203]  Further, "the ADEA does not 'protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.'"[204]  Thus, Plaintiff herein "must connect a departure from or misapplication of procedure to a discriminatory motive—an employer's 'disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual.'"[205]

It should be noted that "[t]he ADEA does not prohibit termination without warning."[206]  However, the Fifth Circuit has found that, when an employer opts to have a

---

[201] Rec. Doc. No. 22-3, Plaintiff's Depo, p. 201.
[202] *Id.* at p. 200.
[203] *McMichael*, 934 F.3d at 459 (citing *Campbell v. Zayo Grp., L.L.C.*, 656 F. App'x 711, 715 (5th Cir. 2016) (per curiam) (unpublished) (holding that "mere disagreement with [the employer's] application of the [reduction-in-force] policy, without more, does not provide substantial evidence of pretext")).
[204] *Id.* at 460 (quoting *Moss*, 610 F.3d at 926 (quoting *Bienkowski*, 851 F.2d at 1507–08)).
[205] *Id.*(quoting *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989)).
[206] *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 151 (5th Cir. 1995).
58686

disciplinary system, failure to follow that system may give rise to inferences of pretext.[207] In evaluating whether a failure to follow a progressive discipline policy gives rise to an inference of pretext under the *McDonnell Douglas* framework, courts consider whether there were guidelines regarding when the policy should be used, whether there were exceptions to the policy, and whether the policy was not just a policy on paper but whether the policy was actually used.[208]

EnLink's Handbook notes on page 5 that: "Offenses resulting in reprimand **or immediate termination** include, but are not limited to; violations of employee conduct guidelines."[209]   Clearly, the possibility of immediate termination based on the egregiousness of an infraction is both contemplated and made known to employees. Further, Plaintiff pointed to no evidence that progressive discipline was mandatory under EnLink's policies and procedures.  The Court is not permitted to second guess EnLink's evaluation of the egregiousness of Plaintiff's conduct in this regard.  That Plaintiff was not given a warning, as compared to the employees to whom he attempted to compare himself, is not evidence of pretext on this issue.

### D.  Hostile Work Environment under the ADEA

To establish a hostile work environment claim under the ADEA, a plaintiff must show that: (1) he was over the age of 40; (2) he was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that

---

[207] *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015).
[208] *Kestler v. Motiva Enterprises, LLC*, 2016 WL 852477, at *18 (E.D. La. Mar. 4, 2016)(citing *e.g., Keller v. Coastal Bend College*, No. 15-40710, 2015 WL 6445751 (5th Cir. 2015); *Taylor v. Peerless Indus. Inc.*, 322 Fed.Appx. 355, 367 (5th Cir. 2009); *Bugos v. Ricoh Corp.*, No. 07-20757, 2008 WL 3876548, at *5 (5th Cir. 2008); *Machinchick*, 398 F.3d at 354 n.29).
[209] Rec. Doc. No. 22-3, p. 360 (emphasis added).
58686

it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.[210]

To satisfy the third element of a *prima facie* case of hostile work environment, a plaintiff must demonstrate that the harassment was objectively unreasonable.[211] A workplace environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment."[212] Further, the complained-of conduct must be both objectively and subjectively offensive.[213] Thus, not only must a plaintiff perceive the environment to be hostile, but it must appear hostile or abusive to a reasonable person.[214] To determine whether conduct is objectively offensive, the totality of the circumstances is considered, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance."[215] However, "[i]ncidental or occasional age-based comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker's employment."[216]

It is undisputed that Plaintiff was over forty at the time of the alleged harassment. Plaintiff has presented summary judgment evidence through his own testimony and the

---

[210] *Smith v. Home Depot U.S.A., Inc.*, 102 F.Supp.3d 867, 883 (E.D. La. April 7, 2015)(citing *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011)).
[211] *Dediol*, 655 F.3d at 441 (citing *Crawford v. Medina General Hosp.*, 96 F.3d 830, 834–35 (6th Cir.1996)).
[212] *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009).
[213] *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007).
[214] *Id.*
[215] *Id.*
[216] *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012)(internal citations and quotation marks omitted).
58686

testimony of Gautreau, that he was subjected to harassment, either through words or actions, based on age. EnLink disputes this testimony, but this is a fact issue for the jury.

As to whether the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment, the Court finds that Plaintiff has presented evidence from which a jury could draw the inference that the alleged harassment meets this standard. Plaintiff and Gautreau both testified that the age-related comments were constant. Plaintiff testified that Vaughn, Cormier, and Gibson asked him about retirement nearly every time they came to the plant. He also testified that he was intimidated by their questioning, which did not cease after he asked them to stop. The Court acknowledges that several comments of which Plaintiff complaints are not specific to age; however, the Court finds that it is for a jury to determine whether, under the totality of the circumstances, Plaintiff has carried his burden of establishing a hostile work environment based on his age. Finally, the Court also finds that Plaintiff has presented evidence that the alleged harassment interfered with his work performance. He testified about feeling intimidated and more prone to make mistakes on the days when he was subjected to these comments by Vaughn, Cormier, and Gibson. Further, Gautreau testified that he was required to adjust Plaintiff's performance evaluation lower than Gautreau intended so younger employees could receive higher bonuses, ostensibly affecting Plaintiff's reward, thus affecting a term, condition, or privilege of employment.

Considering that these comments were allegedly made by Plaintiff's supervisors, including at least one who influenced his termination decision, there exists some basis for liability on the part of the employer for the conduct. EnLink asserts the *Ellerth–*

*Faragher* affirmative defense;[217] however, this defense is unavailable to EnLink as a matter of law because Plaintiff was allegedly the victim of a tangible employment action – termination -  by at least one of his alleged harassers, Mike Leblanc.[218]  There is an issue of fact as to whether Vaugh, Cormier, and/or Gibson, influenced Plaintiff's termination decision, but in any event, these alleged harassers are supervisors, and EnLink is not entitled to this defense.

Accordingly, Defendant's *Motion for Summary Judgment* on Plaintiff's hostile work environment claim is DENIED.

### E.  Retaliation under the ADEA

Plaintiff also claims that he was terminated in retaliation for engaging in the protected activity of objecting to age discrimination and harassment.  The ADEA makes it unlawful to retaliate against an employee "because the employee has opposed allegedly discriminatory practices by the employer or participated in a proceeding, charge or hearing where such practices are challenged .... These protected activities are described as 'opposition' or 'participation' activities."[219]  A plaintiff relying on circumstantial evidence may establish a *prima facie* case of retaliation by proving that: (1) he or she engaged in

---

[217] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).  Under this affirmative defense, in a hostile work environment case, an employer can escape vicarious liability if it can establish that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

[218] "In cases in which the harasser is a 'supervisor,' however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable." *Braud v. Geo Heat Exchangers, L.L.C.*, 314 F.R.D. 386, 390 (M.D. La. 2016)(quoting *Vance v. Ball State University*, 570 U.S. 421, 424 (2013)(citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) and *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257)).

[219] *Rogers*, at *10 (quoting *De Ande v. St. Joseph Hospital*, 671 F.2d 850, 851 n.1 (5th Cir. 1982)).

58686

activity protected by the ADEA; (2) a materially adverse action occurred; and (3) a causal connection exists between the protected activity and the adverse employment action.[220]

EnLink appears to concede the first two elements set forth above and challenges only that Plaintiff has failed to present summary judgment evidence of a causal connection between his termination and his complaints to Gautreau about the age-based comments. Plaintiff contends he was terminated in May 2017, the "very same month he complained" to Gautreau about the comments and retirement questions. Plaintiff claims his deposition testimony confirms this timing, yet Plaintiff fails to cite to this testimony.

Plaintiff testified that Vaughn, Cormier, and Gibson began asking him about retirement and making age-related comments to him around the time Vaughn was sent to the plant, in 2015 or 2016. Plaintiff was asked: "Did you tell Greg Gibson or Eddie to stop asking you about retirement," to which Plaintiff responded, "Yes."[221] Plaintiff was immediately asked when he had asked them to stop, and his response was:

> When I put – it was like when – whenever I mentioned that my daughter was – or do the math, I would say, "Just stop. Do the math, and that's when I'm going to be retiring," and they'd stop. I mean, every time I would see them they would mention, "Well how much longer you got TV."[222]

Plaintiff was asked when he reported the age/retirement comments to Gautreau, and he responded:

> Every time that I -- I was asked to – when I was going to retire or whatever, when they would approach me, I would go tell Jeff and ask him if there's anything to be done. We discussed Human Resources, and Jeff said, no, Human – "Human Resources is not going to help you because they're not" – pretty much, "not on our side."[223]

---

[220] *Id.* (citing *LeMaire v. State of Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007)).
[221] Rec. Doc. No. 22-3, Plaintiff's Depo, p. 67, lines 22-25.
[222] *Id.* at p. 68, lines 3-9.
[223] *Id.* at p. 130, lines 11-17.
58686

Plaintiff further testified that he told Gautreau about these comments "every single time" the comments were made.[224]

Plaintiff admits he never went any further than Gautreau in challenging the allegedly discriminatory conduct:

Q:    Okay.  Why didn't you go to HR individually without Jeff Gautreau when you were called a senior guy?
A:    I didn't think I should.
Q:    Did you call the Anonymous Line?
A:    No.
Q:    Why not?
A:    I tried to handle it through the chain of command.
Q:    Did your supervisor, Jeff Gautreaux, do anything to help you?
A:    I don't know if he mentioned it to somebody above me, but he didn't tell me if he did.[225]

Plaintiff recalled a particularly bad day in March 2017 when he got "fed-up" with the retirement questions.[226]  Plaintiff testified that the retirement questions on this date seemed "more intense than normal" and like "they" were "frustrated that they didn't break me."[227]  Plaintiff again acknowledged that he never contacted HR or call the Anonymous Line about instances of alleged discrimination, and when asked if Gautreau resolved his concerns, Plaintiff responded, "No … he didn't resolve that."[228]  Plaintiff admitted that he never put any of his complaints in writing.[229]   When Plaintiff was asked how he was retaliated against, he responded:  "Age discrimination and wanting senior guys out is all I can --."[230]

---

224 *Id.* at line 22.
225 *Id.* at p. 134, lines 5-17.
226 *Id.* at p. 135, line 24.
227 *Id.* at p. 136.
228 *Id.* at p. 139, line14.
229 *Id.* at p. 146.
230 *Id.* at p. 147.

58686

Gautreau testified that he believed Plaintiff was being targeted by Gibson and Cormier because of "hatred, fear."[231]  When asked to explain, Gautreau responded that he believed Gibson and Cormier were afraid of Plaintiff's "knowledge, his experience. … The knowledge and experience and what he knew about the facility that they didn't know, and their – their insecurement [sic], their personal – personally being insecured [sic]."[232]

Gautreau recalled Plaintiff's complaints to him regarding the retirement comments and testified that Plaintiff asked Gautreau why it was happening, and "if there were avenues of reconciliation to try and find out why this was happening."[233]  Gautreau responded:  "It was a path of destruction if you tried to question forward management about their motives, their conversation, their language on interpretations of individuals."[234]  Gautreau also testified that Plaintiff never asked Gautreau to take action to address the remarks although Gautreau claims he asked the managers where the comments had come from.[235]

Gautreau testified that he contacted HR "toward the end of '16 through '17"[236] regarding the work place harassment of his "six senior guys" but admitted that he never specifically named Plaintiff in any of his complaints.[237]  When asked to clarify what concerns Gautreau actually raised to HR during this time period, Gautreau acknowledged that he reported Gibson's screensaver, Vaughn's inappropriate text messages, Gautreau's FMLA return-to-work meeting, a situation involving Gautreau, Vaughn,

[231] Rec. Doc. No. 22-7, Gautreau's Depo, p. 139, lines 22-25.
[232] Id. at p. 140, lines 2-7.
[233] Id. at p. 102, lines 5-6.
[234] Id., lines 8-11.
[235] Id. at pp. 103-104.
[236] Id. at p. 190, lines 2-3.
[237] Id. at p. 189.

58686

Cormier and a female subordinate, and "work place harassment," which Gautreau explained was "harassment of me and my employees."[238] Gautreau was asked:

> Q:    Okay. Specifically, harassment of Mr. Venable?
> A:    He was included in that, yes.
> Q:    Okay. So what specific harassment of Mr. Venable did you raise to HR?
> A:    The constant barrage of being overpaid, you know … spoiled rotten, not being able to follow directions."[239]

Finally, acknowledging that he was contradicting his previous testimony, Gautreau testified: "My testimony is that I reported all the instances of my personal expenses and harassment, sexual harassment, misconduct, violations of state laws, and everything above and beyond that, to HR and all my direct managers."[240] Gautreau, who originally testified that Plaintiff never asked him to report his complaints, testified that his direct reports asked him to raise these issues to HR.[241] Gautreau acknowledged that he was changing his testimony: "I'm changing my testimony to my voice was the voice of all my direct reports, for every instance of sexual harassment, work place harassment, violation of state rules, regulations and policies, and age discrimination."[242] When asked when he specifically raised these concerns on behalf of himself and his direct reports, Gautreau responded: "'16, '17."[243] Nevertheless, Gautreau admitted that he never specifically referenced Plaintiff by name in any report to HR.[244] Counsel asked Gautreau if HR ever asked him who his direct reports were, to which he responded: "Oh, yes … Everybody

---

[238] *Id.* at pp. 203-204.
[239] *Id.* at p. 205, lines 1-10.
[240] *Id.* at p. 206, lines 6-11.
[241] *Id.* at pp. 206-208.
[242] *Id.* at p. 208, lines 9-14.
[243] *Id.* at p. 209, line 1.
[244] *Id.* at pp. 209-212.
58686

that worked at Riverside underneath me were my direct reports.  I don't think I had to specifically state who they were.  They had an organizational chart."[245]

The Court finds that Plaintiff has failed to present competent summary judgment demonstrating an issue of fact as to the causal connection between any protected activity and his termination.  First, Plaintiff himself testified that he complained to Gautreau about both the age-related and other comments he found offensive in an effort to find out "where the comments were coming from," but Plaintiff admitted he did not ask Gautreau to do anything with his complaints.  Further, Plaintiff offers no support for the assertion that telling the alleged offenders to "stop" constitutes protected activity that should have placed EnLink on notice that he was asserting ADEA rights.

Gautreau initially testified that Plaintiff did not ask him to do anything with his complaints, then Gautreau changed his testimony to state that all his direct reports asked him to report their "work place harassment" to HR.  Indeed, Gautreau admits that he warned Plaintiff against reporting his claims to HR.  Gautreau claims that he reported age discrimination on behalf of himself and his "direct reports" to HR, but he fails to specifically mention this claim several times he was asked about his complaints.  Comments about hatred, fear, insecurity of management, being spoiled, being paid too much money, stupid, etc., are not comments relating to age.  Further, Gautreau admits no less than 6 times that he never mentioned Plaintiff specifically by name and apparently raised a host of complaints to HR, ranging not just from the complaints of his "direct reports" but his own employment issues along with complaints regarding alleged misconduct of

---

[245] *Id.* at pp. 219-221.
58686

managers, an issue wholly unrelated to Plaintiff's claims. Moreover, Gautreau claims he reported this conduct throughout 2016 and 2017, which does not establish a sufficiently specific time to date actual reports of Plaintiff's alleged age discrimination. The Court cannot ascertain summary judgment evidence that any decision-maker, or even purported decision-maker, had knowledge that Plaintiff had asserted his rights under the ADEA and sought protection for what he believed was unlawful discrimination.

In *Paulissen v. MEI Technologies, Inc.*, the district court for the Southern District of Texas addressed a case brought under the ADEA and noted that "[t]he Fifth Circuit has recognized that an informal, internal complaint can be activity protected by an anti-retaliation provision, as long as that complaint asserts a violation of the law." [246] The court further noted that "[t]he Supreme Court has recently considered the language as well as the purpose and context of the anti-retaliation provision of the FLSA and held that the FLSA's anti-retaliation provision protects both oral and written complaints of a violation of the FLSA."[247] "The Supreme Court explained, however, that for a complaint to constitute protected activity the complaint must give fair notice to the employer: 'To fall within the scope of the anti-retaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'"[248]

In *Paulissen*, the employee merely told her employer that another employee had "made age-related comments that made her uncomfortable and asked for advice on how

---

[246] 942 F.Supp.2d 658, 674 (S.D. Tex. 2013)(citing *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) (analyzing the issue under the Fair Labor Standards Act (FLSA) and asserting that "not all abstract grumblings or vague expressions of discontent are actionable complaints")).
[247] *Id.* at 674 (citing *Kasten v. Saint–Gobain Performance Plastics Corp.*, 56 U.S. 1 (2011)).
[248] *Id.* (quoting *Kasten*, 56 U.S. at 14).
58686

to improve her working relationship with [that employee and others]."[249] In so doing, the court found that the employee "neither complained of a violation of the ADEA nor gave [her employer] fair notice that she was asserting rights protected by the ADEA and calling for their protection."[250]   Thus, the court held that, where complaints to coworkers or supervisors "[are] not sufficiently clear or detailed for a reasonable employer to understand them, in light of both content and context, as an assertion of rights protected by the ADEA and a call for the protection of such rights[,]" such complaints "do not constitute protected activity...."[251]

The Court finds that Plaintiff has presented insufficient summary judgment evidence of a causal connection between his protected activity and his termination because there is a lack of evidence that EnLink was on notice of Plaintiff's specific assertion of his ADEA rights and request for protection at the time of his termination.  The record evidence does not establish that Plaintiff's complaint was "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."[252]   It is possible that EnLink may have terminated Plaintiff because of his age, but Plaintiff has failed to present competent summary judgment evidence that he was terminated for engaging in protected activity. EnLink's *Motion for Summary Judgment* is GRANTED on Plaintiff's ADEA retaliation claim.

---

[249] *Id.* at 675.
[250] *Id.*
[251] *Id.*  at 674.
[252] *See* note 247, *supra.*
58686

### F. Louisiana Whistleblower Statute, La. R.S. 23:967(A)

Plaintiff has also asserted a claim under the Louisiana Whistleblower Statute, which provides:

> An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

"For an employee to establish a claim under La. R.S. § 23:967, he must prove that h[is] employer committed an actual violation of state law."[253] This violation must be of a state statute.[254] Notably, Plaintiff must show that EnLink "engaged in workplace conduct constituting an actual violation of state law," and that he notified EnLink of the state law violation and threatened to disclose it.[255] Failure to put forth evidence to satisfy any of these elements must result in a summary judgment in favor of EnLink.

For the same reasons the Court found that Plaintiff has not presented summary judgment evidence that EnLink was on notice of Plaintiff's complaint of age discrimination, the Court finds Plaintiff likewise failed to present evidence that he notified EnLink of the state law EnLink was allegedly violating, or that he threatened to disclose such violation. Accordingly, EnLink's *Motion for Summary Judgment* is GRANTED on Plaintiff's

---

[253] *Goulas v. LaGreca*, 945 F.Supp. 2d 693, 702 (E.D. La. 2013) (citing *Stevenson v. Williamson*, 547 F.Supp.2d 544, 558 (M.D. La. 2008)).
[254] *See Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04); 886 So.2d 1210, 1216.
[255] *See Williams v. Hosp. Servs. Dist. Of W. Feliciana Parish, Louisiana*, 250 F. Supp. 3d 90, 94-95 (M.D. La. 2017)(quoting *Encalarde v. New Orleans Ctr. for Creative Arts/Riverfront*, 158 So. 3d 826 (La. 2015)).
58686

Louisiana Whistleblower Statute claim.

## III. CONCLUSION

For the reasons set forth above, Defendant's *Motion for Summary Judgment*[256] is GRANTED in part and DENIED in part. Plaintiff's ADEA retaliation and Louisiana Whistleblower Statute claims are dismissed with prejudice. Plaintiff's ADEA and LEDL age discrimination and hostile work environment claims remain set for trial.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana this 20th day of February, 2020.

*Shelly D. Dick*

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[256] Rec. Doc. No. 22.

58686